UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| VS. | ) | CR 16-0068 WES |
| | ) | |
| PATRICK CHURCHVILLE | ) | |

_____

MEMORANDUM AND MOTION TO REDUCE SENTENCE UNDER
18 U.S.C. § 3582 FOR EXTRAORDINARY AND COMPELLING REASONS

Patrick Churchville moves this Honorable Court to reduce his sentence based on extraordinary and compelling reasons under 18 U.S.C. § 3582(c)(1)(A)(i). Having exhausted all administrative remedies under the statute, Mr. Churchville has brought his request for relief here to the District Court. Under the statute the Court must determine if "extraordinary and compelling reasons" exist to warrant Mr. Chuchville's release from custody. *See, e.g., United States v. Maumau*, 2020 WL 806121, *4 (D. Utah, February 18, 2020). Mr. Churchville's particular circumstances plainly present reasons warranting relief and his immediate release from custody.[1]

In 2017 the Court sentenced Mr. Churchville for the crimes of wire fraud and tax evasion. He received a total prison sentence of 84 months incarceration. Mr. Churchville has a projected release date of April 3, 2022, based on his time served, credit

---

[1] Mr. Lobo will live with his family here in RI. He has provided general information in his pro se petition for compassionate release, and will provide more particular information to the Probation Department to determine the appropriateness of the residence.

1

earned through participation in programming, and credit for good behavior. While that is his release date, he is eligible for placement in community confinement – halfway house and home confinement - at an earlier date (no later than October, 2021).

Recent changes to the statutory language of 18 U.S.C. § 3582 provide new jurisdiction to federal courts to grant release for extraordinary and compelling reasons. Federal courts may reduce a prisoner's sentence under the circumstances outlined in 18 U.S.C. § 3852(c). Under § 3852(c)(1)(A)(i), a court may reduce a prisoner's sentence "if it finds that" (1) "extraordinary and compelling reasons warrant such a reduction" and (2) the reduction is "consistent with applicable policy statements issued by the Sentencing Commission." Prior to 2018 only the Director of the Bureau of Prisons ("BOP") could file these kinds of "compassionate-release motions." *United States v. Brown*, 411 F. Supp. 3d 446, 448 (S.D. Iowa 2019). The BOP rarely did so.[2]

Against this backdrop, Congress passed and President Trump signed the First Step Act in 2018, a landmark piece of criminal-justice reform legislation that "amend[ed] numerous portions of the U.S. Code to promote rehabilitation of prisoners

---

[2] Although the BOP was first authorized to file compassionate-release motions in 1984, from 1984 to 2013, an average of only 24 inmates were released each year through BOP-filed motions. *See* Hearing on Compassionate Release and the Conditions of Supervision Before the U.S. Sentencing Comm'n (2016) (statement of Michael E. Horowitz, Inspector General, Dep't of Justice). According to a 2013 report from the Office of the Inspector General, these low numbers resulted, in part, because the BOP's "compassionate release program had been poorly managed and implemented inconsistently, . . . resulting in eligible inmates . . . not being considered for release, and terminally ill inmates dying before their requests were decided." *Id*. The report also found that the BOP "did not have clear standards as to when compassionate release is warranted and . . . BOP staff therefore had varied and inconsistent understandings of the circumstances that warrant consideration for compassionate release." *Id*.

and unwind decades of mass incarceration." *Brown*, 411 F. Supp. 3d at 448 (*citing* Cong. Research Serv., R45558, The First Step Act of 2018: An Overview 1 (2019)). In an effort to improve and increase the use of the compassionate-release process, the First Step Act amended § 3852(c)(1)(A) to allow prisoners to directly petition courts for compassionate release, removing the BOP's exclusive "gatekeeper" role.

The amendment to § 3852(c)(1)(A) provided prisoners with two direct routes to court: (1) file a motion after fully exhausting administrative appeals of the BOP's decision not to file a motion, or (2) file a motion after "the lapse of 30 days from the receipt . . . of such a request" by the warden of the defendant's facility, "whichever is earlier." 18 U.S.C. § 3852(c)(1)(A). These changes gave the "district judge . . . the ability to grant a prisoner's motion for compassionate release even in the face of BOP opposition or its failure to respond to the prisoner's compassionate release request in a timely manner." *United States v. Young*, 2020 WL 1047815, at *5 (M.D. Tenn. Mar. 3, 2020). The substantive criteria of § 3582(c)(1)(A)(i) remained the same.

Congress never defined the term "extraordinary and compelling reasons," except to state that "[r]ehabilitation . . . alone" does not suffice. 18 U.S.C. § 994(t). Rather, Congress directed the Sentencing Commission to define the term. *Id.* The Commission did so prior to the passage of the First Step Act, but has not since updated the policy statement. *See* U.S.S.G. §1B1.13 cmt. n.1(A)-(D). In subsections (A)-(C) of an Application Note to U.S.S.G. §1B1.13, the Commission enumerated three specific "reasons" that qualify as "extraordinary and compelling": (A) terminal illness diagnoses

3

or serious medical, physical or mental impairments from which a defendant is unlikely to recover, and which "substantially diminish" the defendant's capacity for self-care in prison; (B) aging-related health decline where a defendant is over 65 years old and has served at least ten years or 75% of his sentence; or (C) two family related circumstances: (i) death/incapacitation of the only caregiver for the inmate's children or (ii) incapacitation of an inmate's spouse, if the inmate is the spouse's only caregiver. *See id.* cmt. n.1(A)-(C). The policy statement also added a catchall provision that gave the Director of the BOP the authority to determine if "there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with" the other three categories. *Id.* cmt. n.1(D). Thus, implicitly recognizing that it is impossible to package all "extraordinary and compelling" circumstances into three neat boxes, the Commission made subsections (A)-(C) non-exclusive by creating a catchall that recognized that other "compelling reasons" could exist. *See United States v. Urkevich*, 2019 WL 6037391, at *3 (D. Neb. Nov. 14, 2019) (noting that §1B1.13 never "suggests that [its] list [of criteria] is exclusive"); *United States v. Beck*, 2019 WL 2716505, at *8 (M.D.N.C. June 28, 2019) ("Read as a whole, the application notes suggest a flexible approach . . . [and] recognize that the examples listed in the application note do not capture all extraordinary and compelling circumstances.").

    The Commission has not updated its policy statement to account for the changes imposed by the First Step Act, and the policy statement is now clearly outdated. The very first sentence of §1B1.13 constrains the entire policy statement to motions filed

solely by the BOP. And an Application Note also explicitly confines the policy statement to such motions. *See* U.S.S.G. §1B1.13 ("Upon motion of the Director of the [BOP] . . . the court may reduce a term of imprisonment . . . ."); *id.* at cmt. n.4 ("A reduction under this policy statement may be granted only upon motion by the Director of the [BOP]."); *see also Brown,* 411 F. Supp. 3d at 449 (describing the old policy statement as "outdated," adding that the Commission "has not made the policy statement for the old [statutory] regime applicable to the new one."); *United States v. Ebbers*, 2020 WL 91399, at *4 (S.D.N.Y. 2020) (describing the old policy statement as "at least partly anachronistic").

Accordingly, a majority of district courts, including district courts within the First Circuit, have concluded that the "old policy statement provides helpful guidance, [but] . . . does not constrain [a court's] independent assessment of whether 'extraordinary and compelling reasons' warrant a sentence reduction under § 3852(c)(1)(A)." *United States v. Beck*, 2019 WL 2716505, at *6 (M.D.N.C. June 28, 2019); *see also Brown*, 411 F. Supp. 3d at 451 ("[T]he most natural reading of the amended § 3582(c) . . . is that the district court assumes the same discretion as the BOP Director when it considers a compassionate release motion properly before it."); *United States v. Fox*, 2019 WL 3046086, at *3 (D. Me. July 11, 2019) ("[D]eference to the BOP no longer makes sense now that the First Step Act has reduced the BOP's role. I treat the previous BOP discretion to identify other extraordinary and compelling reasons as assigned now to the courts."); *United States v. Bucci*, 409 F. Supp. 1, 2 (D. Mass. 2019) (following *Fox* and

5

holding that "the Commission's existing policy statement provides helpful guidance on the factors that support compassionate release, although it is not ultimately conclusive"); *United States v. Redd*, 2020 WL 1248493, at *7 (E.D. Va. Mar. 16, 2020) ("Application Note 1(D)'s prefatory language, which requires a [catchall] determination by the BOP Director, is, in substance, part and parcel of the eliminated requirement that relief must be sought by the BOP Director in the first instance. . . . [R]estricting the Court to those reasons set forth in §1B1.13 cmt. n.1(A)-(C) would effectively preserve to a large extent the BOP's role as exclusive gatekeeper, which the First Step Act substantially eliminated . . . ."); *United States v. Young*, 2020 WL 1047815, at *6 (M.D. Tenn. Mar. 4, 2020) ("[T]he dependence on the BOP to determine the existence of an extraordinary and compelling reason, like the requirement for a motion by the BOP Director, is a relic of the prior procedure that is inconsistent with the amendments implemented by the First Step Act."); *Maumau*, 2020 WL 806121, at *2-*3 (D. Utah Feb. 18, 2020) (collecting cases). This Court, therefore, has discretion to assess whether Mr. Lobo presents "extraordinary and compelling reasons" for his release outside those listed in the non-exclusive criteria of subsections (A)-(C) of the pre-First Step Act policy statement.

Absent any statutory or case law definition, the words "extraordinary" and "compelling" carry their plain meaning. Merriam-Webster defines extraordinary as "going beyond what is usual, regular, or customary". https://www.merriam-webster.com/dictionary/extraordinary. "Compelling" refers to something that is

forceful, convincing, or demands attention. https://www.merriam-webster.com/dictionary/compelling. Therefore, simply, Mr. Churchville's reasons for relief must be unusual or irregular and demanding of attention. He easily meets this measure.

The extraordinary and compelling circumstance warranting Mr. Churchville's release is the fact of the COVID-19 virus. Mr. Chuchville is serving his sentence at FCI Morgantown, WV. The virus did not immediately invade the prison, but has now, to date, infected more than half of the inmate population.[3] Although there is a relatively small number of infections at present, the virus has been a continuous presence in the facility over the last several months. Mr. Churchville also reports that he has been infected and that some inmates are contracting the virus for a second time. Worse, the facility has not vaccinated the inmates yet, and a sizable number of the staff are refusing the vaccine. Mr. Churchville remains rightly concerned for his own well-being.

The tight living conditions at the prison continue regardless of the virus. Mr. Churchville lives in an open dorm setting which does not include social distancing as recommended by the CDC. Additionally, his particular dorm unit is set aside for prisoners with obstructive sleep apnea ("OSA"); a sleep disorder which affects the respiratory system. Although not initially identified as a "COVID co-morbidity",

---

[3] According to the BOP, there are presently 30 active inmate and 5 active staff infections at FCI Morgantown, but, the facility has had 250 total inmate infection out of a maximum population of 443 prisoners. *See* https://www.bop.gov/coronavirus/.

studies are now showing an increased risk of susceptibility, illness, and hospitalization for those who suffer from OSA.[4] Mr. Churchville's medical circumstance and the BOP's mixed approach to prevention plainly make this situation compelling.

That being said, this virus has infected and killed more than 400,000 Americans of all levels of healthiness. Prisoners, however, have a greater chance of being infected because the realities of a prison do not accommodate the social distancing actions needed to protect a captive group from the wildfire spread of disease. The inmates have common eating and recreation areas. They have common baths. They use the same phones (there is no visitation now due to the crisis). They are spreading potential contagions to each other despite any cleaning or counter measures instituted at the facility. The close quarters of prison, makes it a prime area for a rampant spread of the virus. Mr. Churchville will be safer at home.

---

[4] While OSA can leave an effected person susceptible to myriad maladies including heart disorders, circulatory problems, fatigue, and depression, increasing evidence shows it also elevates the risk of COVID infection and the level of serious illness. *See, e.g.,* https://www.usnews.com/news/health-news/articles/2020-12-08/sleep-apnea-an-overlooked-covid-19-risk-factor (last visited January 5, 2021).

**Conclusion**

Mr. Churchville presents "extraordinary and compelling" reasons warranting relief under 18 U.S.C. 3582(c)(1)(A)(i). This Court, therefore, should grant this motion and release Mr. Churchville immediately.

Respectfully Submitted
Patrick Chuchville
By his attorney,

/s/ Kevin J. Fitzgerald, 5775
Assistant Federal Public Defender
10 Weybosset Street, Suite 300
Providence, RI 02903
401-528-4281
FAX 528-4285
kevin_fitzgerald@fd.org

CERTIFICATION

I hereby certify that a copy of this motion was delivered by electronic notification to Dulce Donovan, Assistant United States Attorney, on February 3, 2021.

/s/ Kevin J. Fitzgerald